### RUFUS GATES *versus* EDWIN PARKER.

Authority given to an agent to arrange an unsettled affair, and draw on his principal for such sums as were necessary, is a virtual acceptance of a draft made with the knowledge and assent of such agent.

But such draft cannot be substituted for another, payable to the order of a different person, without the knowledge or consent of the principal or his agent.

REPORTED by APPLETON, J.

Assumpsit for money had and received, and money paid, and also against the defendant as acceptor of a draft drawn upon him by one McNeil & Vose, in favor of Charles Day, and endorsed by said Day.

The plaintiffs introduced the draft sued, and a letter from the defendant to McNeil & Vose, dated October 27, 1854, and also the writ in the case now pending, of Edwin Parker v. W. R. McNeil and al., dated November 6, 1854, with the account annexed to the writ, and the additional account specifying the draft paid, and served on the same day.

It was admitted that at the time the draft sued for was drawn, the defendant had a mortgage on the bark Pilot Fish, to secure him for advances to McNeil and Vose.

*F. A. Pike,* counsel for the plaintiff.

The defendant, by his letter of October 27, 1854, fully authorized McNeil & Vose to draw on him to pay the lien claims on the " Pilot Fish," and constituted Manson his agent to fix upon amounts, and to transact the business.

The draft sued was given for a full consideration, moving from the plaintiff to the defendant through Day.

The defendant had a mortgage upon the Pilot Fish for more than she was worth, and whatever discharge there was of any of the lien claims upon her, relieved them to that extent. They were obliged to pay the lien claims in order to obtain the property.

By the solicitation of defendant's agent, aided by defendant's letter to McNeil & Vose, Day took the draft of McNeil & Vose, and discharged his claim upon the vessel. The plaintiff, in consequence of Manson's previous requests, and the defendant's letter, took the draft of Day and paid him the money for it.

In this way the plaintiff in effect paid Day's lien claim upon the vessel, and the defendant received the benefit of the payment.

The direction to draw for a particular purpose, amounts to an acceptance of the draft, and parties taking the draft in consequence of the promise to accept, can maintain an action against the drawee as acceptor. Coolidge v. Payson, 2 Wheaton, bb.; McEvers v. Mason, 10 John., 207; Goodrich v. Gordon, 15 Johns., 6; Banorgee v. Hovey, 5 Mass., 38; Storer v. Logan, 9 Mass., 55–58; Wilson v. Clements, 3 Mass., 1; Carnegie and al. v. Morrison and al., 2 Met., 381.

Here was a general letter of credit, embracing all lien claims, and then a particular designation of this amount of Day's, and the time upon which the draft was to be drawn by Manson, the defendant's agent. This designation of the agent fixed the liability to this debt.

If Day could maintain an action against the defendant, then the plaintiff could. There is the same privity between the drawee and the subsequent holders who take the paper upon the strength of the drawee's promise, that there is between the original parties. Goodrich v. Gordon, above cited.

It makes no difference in the liability of a party, whether he agrees to accept a bill already drawn, or one about to be

drawn. Carnegie v. Morrison, above cited; Coolidge v. Payson, above cited.

This case presents strongly the point insisted on in Mason v. Hunt, Douglass, 297, and in Pierson v. Dunlop, Cowper, 591—that the holder of the paper should take it on the strength of the drawee's promise. This is also a leading point in McEvers v. Mason.

Nor does the exchange of drafts make any difference.

1. Manson's request to Day, to take a draft for his bill pertained to the amount of the bill and the time of payment, and not to a particular piece of paper.

2. It cannot possibly make any difference to Parker, as the amount and time of payment are the same.

3. Parker is not liable on the draft destroyed. Nobody could maintain an action on that draft after this was paid.

4. The objection pertaining to a change of drafts is merely technical, and Parker waived it when called upon by Day, and he said the reason he did not pay was because it was not presented at once, and because he had lost enough by Vose & McNeil.

The plaintiff, by his arrangement with Day, and his payment to Day, actually paid the original draft, which was accepted by the defendant, and should now prevail on the money counts for money paid for the defendant's benefit.

*Bion Bradbury*, counsel for the defendant.

This is an action brought by the plaintiff to recover the amount of a bill of exchange, drawn by Messrs. McNeil & Vose upon the defendant, in favor of Charles Day, and by him endorsed to the plaintiff.

The plaintiff alleges that the defendant accepted this bill by virtue of a letter written by him to McNeil & Vose, (the drawers,) or by virtue of a parol acceptance made through T. B. Manson, his agent and clerk, or rather that by one or the other of these modes he agreed to *accept* the bill, and is therefore liable as acceptor.

This bill *was not in existence* when the alleged promise to accept was made.

Was there a written promise to accept this bill?

The only writing produced in the case is the letter of defendant to plaintiff of October 27, 1854. The language used by the defendant is: " The bearer of this, my clerk, Mr. T. B. Manson, is authorized to confer with you about the matter, and arrange with you to draw on me at sight, or on short time, for such sums as may appear needful."

This is merely an authority to Manson to confer with McNeil & Vose, and *arrange* with them to draw, &c., for such sums as may appear needful. They did confer. What arrangement was made? That Vose & McNeil should draw at their discretion? Not at all. There is no evidence of any arrangement. Manson remained there, settled the claims himself, and wrote the draft.

If the promise to accept be in writing, the paper containing the promise should describe the bill to be drawn, so as to identify and distinguish it from all others. Story on Bills of Exchange, 249 ; 3 Kent's Com., p. 84 ; 2 Wheaton's R., 66.

Now this letter describes no particular bill so as to identify and distinguish it from all others. It describes no specific bill so as to identify and distinguish it from all others. It describes no specific bill. It only refers to such bills as, upon a conference with McNeil & Vose, Manson might direct to be drawn. It is not a promise to accept the bills that might be drawn, except inferentially. An arrangement is to be made by Manson for McNeil & Vose to draw upon Parker.

Nor is it a promise to accept generally. But if it were a promise to accept generally, *without pointing to any specific bill*, an action could not be sustained against the defendant as on an acceptance. Boyce v. Edwards. 4 Peters, 111 ; Riggs v. Lindsay, 7 Cranch, 500. The letter, then, is merely evidence of Manson's authority to confer and arrange with McNeil & Vose.

It cannot be pretended that Manson, acting under this

authority, ever gave any written promise of acceptance for Parker.

The only evidence of what Manson did, is to be found in the deposition of Charles Day, introduced by the defendant.

Neither Manson, nor McNeil & Vose are offered to vary the evidence of Day.

If McNeil & Vose had any authority from Parker, through Manson, to draw upon Parker without the consent of Manson, or his knowledge, they would have been present to testify.

Day testifies, "I saw Manson here in November. I went to Mr. Vose's house and *saw Mr. Manson there settling up claims on the bark. He said to me he was authorized to settle the claims for Mr. Parker.* He showed me the letter from Parker to Vose & McNeil. Manson wanted me to take a draft on thirty days.

"*I took a draft on thirty days, payable to the order of J. H. Cox,* for the balance due me on the suit of sails."

"I think Mr. Manson wrote the first draft. It was signed by McNeil & Vose, the same as this. *Manson said it would be accepted and paid.* In consideration of this draft I think I receipted my bill. There is no doubt I receipted my bill when I took the first draft." In cross examination he said, "I think I did not say anything to Gates about the first draft. I think I did not say anything to Manson about the second draft. Mr. Manson never said to me that the second draft should be accepted and paid."

Manson was defendant's agent, and could do no more than Parker could do, if present. Now supposing Parker to have been present, there could have been but a *parol promise* to accept the particular draft drawn by Vose & McNeil in favor of Cox, which is not the draft in suit.

The second bill was not then drawn, nor was the drawing such a bill contemplated, when Manson said the first bill should be accepted and paid.

A parol promise to accept a non-existing bill would not amount to an acceptance. 2 Peters' U. S. R., 170; 3 Kent's Com., 85.

The bill in suit was drawn after the first draft had been made — after Day had receipted his bill — after Manson had said the particular draft would be accepted and paid — and drawn, too, without the authority, consent or knowledge of Manson or Parker. The transaction was finished and complete.

Day afterwards proposes to McNeil & Vose to take up the first draft and give a new one, payable to him and not to Cox. But McNeil & Vose had no authority to make the exchange. They had no power to draw, except as directed by Manson. Day says that Manson told him, that *he* (Manson) was settling the claims on the bark. He never authorized the exchange.

But it is necessary, also, that the holder of the draft should take it upon the faith of the promise of the drawee to pay it, in order to maintain this action.

The plaintiff undoubtedly took the draft upon the faith of Day's representation to him, as to the agreement to accept.

But Day did not represent the matter truly to the plaintiff. He omitted a very important fact — the drawing of the first draft. He says he stated the same thing to the plaintiff as he has stated in his deposition; *but he says he did not tell Gates* (the plaintiff) about the first draft.

He (Day) says, "I took the draft upon the strength of Manson's representations to me, and the letter of Parker."

Now the letter contains no promise to accept generally, nor any specific draft; what, then, were Manson's representations to Day? Simply that he was authorized to settle the claims upon the bark, and was Parker's agent for that purpose, and that this particular draft would be accepted and paid; but not that any other one would be, or that McNeil & Vose had any authority to draw without his knowledge and consent.

Day gave the plaintiff to understand that there was but one draft. He made no inquiry of McNeil & Vose, or of Manson, as to the draft. He took it entirely upon Day's representations, which were not correct.

The plaintiff is not aided in this case by the fact, that defendant had a mortgage upon the vessel to secure his advances.

Because (1) the mortgage was only security for what he had *actually paid*. (2) The mortgaged property was not sufficient security for the debt—the vessel selling for several thousand dollars less than the defendant claims. (3) If he had not promised to accept the draft so as to be legally liable for it, his mortgage did not cover it. Nor is the plaintiff aided by the writ and accounts in the suit of Parker against McNeil & Vose, put into the case as evidence, because this draft is not included in that account. The draft was dated November 6,—the credit in the account referred to is under date of November 4, before this draft was drawn. And further, the account made up by Parker, after the sale of the vessel (which is made a part of this case) contains no charge of this draft.

Indeed, the draft did not come to hand until after the accounts between Parker and McNeil & Vose had been closed. It was not presented until after it matured. And the only evidence of any presentment is from Day, who says that Parker told him it had been presented. There was gross negligence on the part of the plaintiff in not sending the bill forward to know whether it would be accepted or not.

But the whole case turns upon this question. An account having been settled by the parties interested, and paid by a bill of exchange, which bill an agent of the drawee had said should be accepted and paid, can the drawer, without any authority from the drawee or his agent, take up that draft and substitute a new draft for it in favor of another payee, and the drawee be held as an acceptor of the new draft upon an alleged promise to accept the first draft.

It seems to me very clear upon legal principles that the drawee cannot be held as acceptor under such circumstances.

Gates *v.* Parker.

CUTTING, J. The defendant is sued as the acceptor of a draft, drawn on him by McNeil & Vose, on November 26, 1854, payable to the order of Charles Day, and by him endorsed to the plaintiff, and if he is legally liable in this action, it can only be by reason of his alleged acceptance.

It seems that the defendant, at the date of the draft, was interested as mortgagee in a bark, then or about to be launched, on which Day had a lien claim for a suit of sails; that the defendant sent Manson, his clerk, with his letter to McNeil & Vose, the builders and mortgagers of the bark, authorizing the former to confer with the latter respecting the claims on the bark, and the latter to draw on him for such sums as might be needful. Under these circumstances Day presented his demand, and received from McNeil & Vose a draft on the defendant, payable to the order of James W. Cox for the balance due him, who thereupon receipted his account. This transaction was with the knowledge and consent of Manson, and being in accordance with the tenor of the letter, would render it obligatory on the defendant to accept the draft, and in legal contemplation it was accepted at its inception, and the defendant's writing thereon to that effect would not have rendered the acceptance more obligatory on him. Both Manson and the letter had then fulfilled their respective missions, and Day's claim for a valuable consideration had been discharged. It would be the introduction of a new element into the commercial law, for this court now to decide, as contended for by the plaintiff's counsel, that such draft could be substituted for another payable to the order of a different person, without the knowledge or consent of the defendant or his agent. We recognize the law as embraced in the decisions cited, but among them discover none, which in this particular, sustains the plaintiff's proposition. As to the draft in suit the defendant may truly say, *non haec in foedera veni.* According to the agreement of the parties, the plaintiff must become

*Nonsuit.*